UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ENTERPRISE RENT-A-CAR COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:03-CV-1480 CAS |
| | ) | |
| U-HAUL INTERNATIONAL, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Enterprise Rent-A-Car Company's ("Enterprise") motion to enforce settlement against Defendants U-Haul International, Inc. ("U-Haul") and eMove, Inc. ("eMove") (collectively "Defendants"). The Court held an evidentiary hearing on the motion on January 18, 2007. Having considered the pleadings, exhibits, statements of counsel, and proposed findings of fact and conclusions of law submitted by the parties, the Court hereby makes the following findings of fact and conclusions of law.

Enterprise is a Missouri corporation with its principal place of business in St. Louis. Defendants are corporations with their principal places of business in Phoenix, Arizona that operate numerous locations in the Eastern District of Missouri and elsewhere. eMove is a wholly-owned U-Haul subsidiary, and is the exclusive licensee and user of many of the trademarks at issue in this case. Enterprise alleges in its complaint that it is the owner of numerous distinctive trademarks and service marks comprising the lower case letter "e," including one mark which is just the lower case "e" (the "Marks").

Enterprise uses the Marks in connection with its business of vehicle rental, leasing, sales and related reservation services throughout the United States. Enterprise owns numerous registrations

on the United States Principal Register for many of the Marks. Enterprise asserts that the Marks are valid and incontestable, and constitute a family of long-standing and valuable Marks which it has used continuously since at least 1967. Enterprise alleges that long after it established its rights in the Marks, U-Haul began using one or more marks comprising an "e," some with a lower case "e," which are confusingly similar to one or more of Enterprise's Marks and infringe on Enterprise's registered Marks. Enterprise alleges that U-Haul is using these marks in connection with the offering of vehicle rental, leasing, sales and services, including through its "e-move" network, the Internet website www.emove.com and interrelated websites including www.uhaul.com.

Enterprise's Fourth Amended Complaint asserts claims for trademark infringement under 15 U.S.C. § 1114 (Count I); trademark infringement under 15 U.S.C. § 1125(a) (Count II); dilution under the Model State Trademark Act of 1964 (Mo. Rev. Stat. §§ 417.061, et seq.) (Count III); cancellation of registration under 15 U.S.C. § 1119 (Count IV); declaratory judgment denying registration (Count V); common law trademark infringement (Count VI); and unfair competition in violation of Missouri common law (Count VII).

In September 2006, the parties notified the Court that this action had settled. The Court issued an Order dated September 21, 2006, that vacated the trial setting and directed counsel to file dismissal papers within thirty days. The parties requested several extensions of time to file dismissal papers, and plaintiff Enterprise filed the instant motion to enforce the settlement on December 12, 2006.

### **FINDINGS OF FACT**

1. Plaintiff Enterprise is a Missouri corporation with its principal place of business in St. Louis. Enterprise's business is vehicle rental.

2.  Defendants U-Haul and eMove, also in the business of vehicle rental, are corporations with their principal places of business in Phoenix, Arizona. eMove is a wholly-owned U-Haul subsidiary, exclusive licensee and user of many of the trademarks at issue in this case.

3.  Enterprise commenced this action on October 15, 2003 alleging that various trademarks employed by Defendants infringed upon various Enterprise trademarks, including its green roadway "e" mark.

4.  In late August 2006, the parties engaged in settlement negotiations. Those negotiations centered primarily around Defendants' use of a rectangular green bar containing white lettering identifying eMove's internet web site, www.emove.com.

5.  On September 5, 2006, Alan Popkin, one of Defendants' lawyers, put forth a settlement offer to Enterprise.

6.  Defendants' settlement proposal was memorialized in a letter Mr. Popkin sent to Enterprise's counsel, Paul Maddock and Steve Garlock, dated September 5, 2006 (the "September 5 letter"). See Doc. 208, Ex. 3.

7.  The same day, September 5, 2006, Mr. Maddock and Mr. Garlock telephoned Mr. Popkin to accept the offer. Mr. Maddock later sent an e-mail to Mr. Popkin, stating in relevant part:

    > Just a quick confirmation, on behalf of Enterprise Rent-A-Car Co., Steve [Garlock] and I called and accepted the last settlement proposal from you. Thank you very much for working with us to get the settlement done. As we discussed, all depositions have been cancelled and we have stopped working on all briefing. Jonathon and I will call Judge Shaw's chamber in the morning and advise them that the case has settled.

8.  Thereafter, the lawyers for the parties began the process of drafting a formal settlement agreement to embody the terms of the September 5 letter. In the days that followed, between September 5, 2006 and November 28, 2006, the lawyers exchanged at least ten drafts of

agreements, as well as exchanges of several hundred documents proposed by one side or the other as exhibits to be incorporated into the agreement.

9.  Having been advised by counsel that this matter had been settled, on September 21, 2006, the Court issued an order vacating the trial setting and denying without prejudice all pending motions. Counsel were granted thirty days to file a stipulation for dismissal, a motion for leave to voluntarily dismiss, or a proposed consent judgment. Over the next two months, the Court granted five (5) extensions of time to file these documents.

    a.  In the first motion for extension, which was requested by Enterprise, plaintiffs told the Court, "The Parties reached a term sheet agreement and since then have been amicably working towards finalizing language for a settlement agreement."

    b.  The second motion for extension, which was also requested by Enterprise stated, "The Parties are very close to an agreement but require additional time to complete the process."

    c.  In its third motion for an extension, Enterprise stated, "The Parties have agreed on the language of the settlement agreement, but are attempting to compile a final list of exhibits demonstrating use and require additional time to complete this process."

    d.  The fourth motion for extension was filed by Defendants. In that motion, Defendants stated to the Court, "The Parties have agreed on the language of the settlement agreement, but are still attempting to compile a final list of exhibits demonstrating use and require additional time to complete this process."

    e.  The fifth motion for extension was filed by plaintiff. Enterprise mirrored the language of Defendants, again telling the Court, "The Parties have agreed on the language of

the settlement agreement, but are attempting to compile a final list of exhibits demonstrating use and require additional time to complete this process."

In granting the fifth extension, the Court stated that no further extensions would be granted. On December 12, 2006, the final deadline to file the settlement documents, plaintiffs filed the instant motion to enforce settlement.

10. The exchange of proposed agreements and exhibits culminated in a confidential settlement agreement document sent by e-mail on November 6, 2006 (the "Settlement Agreement") from Defendants' counsel to Enterprise's counsel, who expressed acceptance without modification that same day. The e-mail from Defendants' counsel accompanying the Settlement Agreement stated,

> Attached is a 'red-line' of the last draft that you sent. It appears to me that the changes are not significant and I hope that it appears to you that they are not. My clients have one further demand; that is, that Andy Taylor be the signatory for ERAC.

Doc. 208, Ex. 8. That same day, Enterprise's counsel responded:

> Our client Enterprise accepts this last settlement offer attached to your e-mail of today as a Word file. As to eMove/U-Haul's other request, that Mr. Taylor sign it, our view is that [it] is not a part of the settlement offer, and it was not in the settlement agreement, and thus, Enterprise is free to have someone sign the agreement who can bind Enterprise. Thus, I think it's fair to say that Mr. Taylor will not be signing the agreement. As you know, the Parties already agreed upon who can sign, and this is covered by paragraph 13, which states:
>
> 13. Authority to Enter Into the Agreement
> Each person executing below affirms that he/she is authorized to execute this Settlement Agreement on behalf of the Party which he/she represents and that his/her signature is sufficient to legally bind that Party under the terms hereof.
>
> Please give me a call to discuss the logistics of getting signatures obtained and making sure we have all the exhibits your client desires to have attached.

Doc. 208, Ex. 9.

11. At no time during the negotiation process did either party tender a signed copy of the November 6, 2006 Settlement Agreement to the other.

12. On November 7, 2006, Enterprise proposed new Exhibits 1 through 8. These exhibits were different than the original exhibits Enterprise proposed on September 12, 2006.

13. On November 8, 2006, Defendants' counsel sent an e-mail to Enterprise's counsel stating:

> Attached is the version of the settlement agreement which I believe to be the final product of these negotiations and which we have forwarded to our clients for execution. Please confirm that we are working off of the same version for execution.

Transcript of Jan. 18, 2007 Hearing, at 4:8-17 ("Hearing Tr."). The document referred to was the November 6, 2006 Settlement Agreement. Doc. 208, Ex. 1

14. On November 10, 2006, Mr. Maddock reiterated Enterprise's objection to the exhibits that Defendants tendered on November 8, 2006, including the use of trademark applications and registrations, despite the fact that Enterprise originally proposed many of these exhibits. Enterprise explained that the associate who compiled the original nine exhibits "was under the misimpression that we needed examples of the trademark applications and registration too for the other definitions."

15. On November 15, 2006, Defendants sent Enterprise's counsel a revised set of proposed exhibits in an attempt to resolve Enterprise's objection to the set Defendants proposed on November 8. Enterprise never agreed to these exhibits.

16. On November 16, 2006, Enterprise's counsel proposed a set of forty new exhibits which Enterprise wished to attach to the agreement. No numbers had been assigned to these additional exhibits. U-Haul never agreed to these exhibits.

17. On November 20, 2006, Enterprise submitted to Defendants an electronic file nineteen megabytes in size and containing hundreds of pages of additional proposed exhibits. U-Haul never agreed to these exhibits.

18. On November 29, 2006, Arthur Smith, counsel for Defendants, sent a letter to Mr. Maddock stating, "The recent wrangling over what documents should or should not be exhibits to the settlement agreement between our respective clients has revealed an ambiguity in the agreement which needs to be resolved before we can bring this to a conclusion." Mr. Smith included with the letter another draft of the Settlement Agreement that included additional revisions to paragraph five.

19. On December 12, 2006, Enterprise filed the instant Motion to Enforce Settlement along with 187 pages of exhibits.

## CONCLUSIONS OF LAW

This Court has the inherent power to enforce settlement agreements. Leon Indus., Inc. v. I.C.N. Pharms., 472 F. Supp. 1241, 1242 (E.D. Mo. 1979). Enterprise must prove the existence of the settlement agreement by clear and convincing evidence. Visiting Nurse Assoc., St. Louis v. VNAHealthcare, Inc., 347 F.3d 1052, 1053 (8th Cir. 2003). A settlement agreement is a contract between the parties and, therefore, contract law governs its enforcement. Id. Because Missouri law governs, as stated in the Settlement Agreement, the Court looks to Missouri law to determine whether an enforceable contract was formed. See Doc. 208, Ex. 1 at 5, ¶ 12.

The principal question under Missouri law is to determine whether there was a mutual acceptance of the terms of the agreement. Visiting Nurse Assoc., 347 F.3d at 1054. To form a valid contract in Missouri, the Court must find the basic contract elements of offer, acceptance, and consideration. Beck v. Shrum, 18 S.W.3d 8, 10 (Mo. Ct. App. 2000).

The Court notes that the Settlement Agreement acknowledges that consideration exists. See Doc. 208, Ex. 1 at 1. "The recitation of consideration in an agreement is prima facie evidence that consideration to support the agreement was present; it creates a presumption that the recitals are true, a presumption which continues unless overcome by evidence to the contrary." Earl v. St. Louis Univ., 875 S.W.2d 234, 237 (Mo. Ct. App. 1994). No evidence to the contrary was presented, and the Court finds that there was consideration. This leaves for determination whether there was offer and acceptance.

There is little debate regarding the chronology of events. The parties' settlement efforts led to a settlement in principle as evidenced by the September 5 letter from Defendants' counsel, generally summarizing the settlement terms. What followed was a series of proposals for the formal agreement exchanged between counsel for the parties culminating in the November 6 Settlement Agreement presented to and accepted by Enterprise's counsel. See generally Docs. 208 and 210; Hearing Tr. at 3:9-5:4. The Court finds that the November 6 Settlement Agreement presented by Defendants' counsel by e-mail of that date as Defendants' proposal for the formal settlement document constituted an offer of settlement, and that the reply e-mail of that date by Enterprise's counsel constituted an acceptance of that offer. Having met the offer, acceptance, and consideration requirements, the Court finds the November 6 Settlement Agreement to be an enforceable contract that represents the terms of settlement of this case. See Beck, 18 S.W.3d at 10.

Defendants argue that if terms of the Settlement Agreement place certain contractual restrictions on their use of the green eMove Banner mark, then their counsel lacked authority to consent to such terms in settlement of the case. They submit an affidavit of their counsel in support. See Popkin Aff. at 2. The argument is unavailing. The issue is not whether counsel had the authority to consent to particular terms in the agreement, but whether counsel had the authority to present the

8

November 6 Settlement Agreement to Enterprise's counsel as an offer of settlement. If counsel had the authority to present the document, the presentation of the document with its terms, whatever they may be, constituted an offer which could be and was accepted by Enterprise to create an enforceable contract.

The Court must therefore determine whether Defendants' counsel had the authority to offer the November 6 Settlement Agreement to Enterprise's counsel as the terms which Defendants were willing to offer. The record is clear that Defendants' counsel had that authority. The record is devoid of any evidence to support a lack of authority to present the offer, and there is ample evidence to the contrary. The September 5, 2006 letter from Defendants' counsel setting forth the principal settlement terms states, "I think this fairly captures the proposal that I made on behalf of U-Haul," thus suggesting that the terms were authorized by Defendants. Doc. 208, Exs. 2 and 3. A later settlement proposal from Defendants' counsel contained the statement "we believe this version fairly captures the substance of the agreement between our clients regarding the resolution of the conflict." Doc. 208, Ex. 6. The e-mail forwarding the November 6 Settlement Agreement also indicated that Defendants' counsel had authority to make the offer, stating, "My clients have one further demand," thus implying that Defendants were in agreement with all of the terms in the November 6 Settlement Agreement. Doc. 208, Ex. 8. These statements clearly demonstrate Defendants' counsel's apparent authority to present those offers on behalf of his clients.

At the hearing, Defendants' counsel argued that the Settlement Agreement was merely a draft circulated for consideration and was not meant to be an offer (Hearing Tr. at 14:3-17). There is no evidence, however, to support this contention and counsel's actions and statements as noted above in forwarding various proposals to Enterprise's counsel undermine Defendants' argument.

"Under Missouri law an attorney is presumed to have the authority to settle a case if the attorney expressly states he has such authority or negotiates as though he does." Glass v. Kirkland, 29 F.3d 1266, 1269 (8th Cir. 1994) (citing Barton v. Snellson, 735 S.W.2d 160, 163 (Mo. Ct. App. 1987)). The attorneys for the parties negotiated as though they had the authority to settle the case. As the parties claiming that their attorneys were not given the authority to enter into a settlement agreement, Defendants bear the burden of establishing the lack of authority. Id. They have not met this burden. The facts, as outlined above, demonstrate that counsel for both sides possessed the apparent authority to settle the case. See Rosenblum v. Jacks or Better of Am. West Inc., 745 S.W.2d 754, 762 (Mo. Ct. App. 1988) (employment of an attorney to act for a client in a lawsuit expressly authorizes his appearance in the case, and implicitly authorizes the attorney to bind the client in matters of procedure); Barton, 735 S.W.2d at 163 (finding that attorney had the apparent authority to act on plaintiffs' behalf and to bind them to a settlement.).

Moreover, Defendants represented to this Court that the "Parties have agreed on the language of the settlement agreement, but are still attempting to compile a final list of exhibits demonstrating use." Doc. 203 at 1. This constitutes an evidentiary admission that the parties had indeed reached an agreement on the language of the Settlement Agreement. See Heil Co. v. Snyder Indus., Inc., 763 F. Supp. 422, 427 (D. Neb. 1991) (finding that a statement made in a trial brief constituted an evidentiary admission). Based on this representation to the Court, it is clear that a settlement was reached.

Defendants assert that no agreement was finalized because the parties never agreed on the exhibits to be attached to the Settlement Agreement. Hearing Tr. at 15:21-20:16. The Settlement Agreement expressly states, however, that the exhibits were merely to show present uses as of the date of settlement. Doc. 208, Ex. 1 at 2. Even if this task is never completed, the Settlement Agreement is sufficiently definite to bind the parties. The parties need not reach an agreement on every term, so

long as there is sufficient substance to discern the parties' intent. Visiting Nurse Assoc., 347 F.3d at 1054; Enterprise Rent-A-Car Co. v. Rent-A-Wreck of Am., Inc., 181 F.3d 906, 909 n.5 (8th Cir. 1999). The Eighth Circuit has enforced agreements where the terms were far less definite. See Rent-A-Wreck, 181 F.3d at 909.

In Rent-A-Wreck, counsel for Rent-A-Wreck forwarded a letter on behalf of his client, proposing several advertising phrases as alternatives to those that formed the basis of the suit. Id. at 908. Counsel for Enterprise responded by telephone and selected three of the five proposed phrases. Despite Rent-A-Wreck's claims of lack of authority and definiteness, this selection constituted an acceptance of the letter offer. Id. The Eighth Circuit found that the letter proposal and oral acceptance thereof was sufficient to establish a binding settlement agreement based on the terms of the letter. Id. at 909. Following Rent-A-Wreck, the Court holds that whether or not the task of assembling the exhibits showing present uses is completed, the November 6 Settlement Agreement is sufficiently definite to be an enforceable contract.

Defendants also contend that because they had a different understanding than Enterprise of the meaning of certain terms in the November 6 Settlement Agreement, there was no meeting of the minds. However, Defendants' subjective intent is irrelevant as to whether there was a meeting of the minds. The Missouri courts have rejected a focus on subjective intent and instead examine the meaning and intent expressed in the contract language:

> a literal application [of this theory] would result in there being no meeting of the minds, and thus no contract, any time parties are unable to agree upon the meaning or interpretation of a contract or its terms. Obviously, that cannot be true. In Missouri, courts look to the parties' *objective* manifestations of intent to determine whether there was a "meeting of the minds." A person's subjective intent is irrelevant. It is the actions, and not the intentions or suppositions, of the parties that determine whether or not there is a contract and the terms of the contract. Under the objective theory of contracts applied in Missouri since 1892, the stress is on the outward manifestation of assent made to the other party, in contrast to the older idea that a contract was a true "meeting of the minds." It is presumed the parties' intent is expressed by the natural

11

and ordinary meaning of the language in the contract. Disregarding either party's secret surmise or undisclosed assumption, the court must ascertain the parties' meaning and intent as expressed in the language used and give effect to that intent.

. . . [I]f a written instrument, on its face, expresses a contractual obligation, one of the parties should not be permitted to avoid it on the grounds that it was never intended as such unless the evidence to such effect is cogent and convincing. Thus, a meeting of the minds is necessarily implied by the existence of a contract.

Don King Equip. Co. v. Double D Tractor Parts, Inc., 115 S.W.3d 363, 369 (Mo. Ct. App. 2003) (internal citations omitted). The Court finds that there was a meeting of the minds between the parties.

Defendants also argue that the Settlement Agreement was not final until the parties exchanged signature pages. Hearing Tr. at 21:11-17. This argument is similarly unavailing. All that is required to give effect to an agreement is a mutual assent to the terms. Local Joint Executive Bd., Hotel and Rest. Emp. and Bartenders Int'l Union v. Nationwide Down towner Motor Inns, Inc., 229 F. Supp. 413, 416 (W.D. Mo. 1964) ("It is well established that assent to a contract may be shown in other forms rather than by signature"). The authorized exchange of offer and acceptance between counsel is sufficient to evidence an agreement to the terms. Rent-A-Wreck, 181 F.3d at 909-10.

Based on the foregoing, the Court finds that the November 6, 2006 Confidential Settlement Agreement, Exhibit 1 to plaintiff's Memorandum in Support of its Motion to Enforce Settlement [Doc. 208], filed under seal, is a valid and enforceable contract between the parties in settlement of this litigation.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Enterprise Rent-A-Car Company's Motion to Enforce Settlement is **GRANTED**. [Doc. 207]

**IT IS FURTHER ORDERED** that this matter is **DECLARED** settled on the terms set forth in the November 6, 2006 Confidential Settlement Agreement.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED with prejudice**.

**IT IS FINALLY ORDERED** that the Court retains jurisdiction over the November 6, 2006 Confidential Settlement Agreement with respect to interpretation and enforcement thereof.

An appropriate order of dismissal will accompany this memorandum and order.

*/s/ Charles A. Shaw*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  9th  day of April, 2007.